1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Kristen Burnham, Individually and as      )   No. CV-07-8017-PHX-DGC
     Representative of the Estate of Caroline   )
10   Burnham and as Representative of E.M.,     )
     a minor,                                   )   **ORDER**
11                                              )
                     Plaintiff,                 )
12                                              )
     vs.                                        )
13                                              )
     United States of America; and Richard     )
14   Alan Young,                                )
                                                )
15                   Defendants.                )
                                                )
16   _____  )

17

18         Defendant Richard Young is a United States Navy officer stationed in Norfolk,

19   Virginia.  On Sunday, May 29, 2005, during the Memorial Day weekend and while Young

20   was on temporary assignment in Yuma, Arizona, Young was involved in a traffic accident

21   that caused the death of Caroline Burnham.  Caroline's sister, Kristen Burnham, brings this

22   negligence action on behalf of Caroline's estate and minor son.   The third amended

23   complaint asserts both that Young is personally liable and that Young was acting within the

24   scope of his employment, rendering the United States liable for Young's alleged negligence

25   under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ("FTCA").  Dkt. #37 at 3-4.

26   The Court granted a motion for summary judgment on scope of employment filed by the

27   United States, finding as a matter of law that Defendant Young was not acting within the

28   scope of his employment at the time of the accident.  Dkt. #79.

Defendant Young has now filed a motion for summary judgment on the issue of liability. Dkt. ##101-102. The motion has been fully briefed. Dkt. ##108-110, 113. Plaintiff has filed two motions to strike, challenging Detective Luna's affidavit and Defendant's expert witness, Toby Gloekler. Dkt. ##111, 116. Defendant has filed a motion to strike Plaintiff's expert witness, Anselmo Najera. Dkt. #114. For the reasons stated below, the Court will grant Defendant Young's motion for summary judgment. The motions to strike will be denied as moot.[1]

**I.    Background Facts.**

The following facts are not disputed. The accident occurred on an isolated stretch of highway with no other vehicles in the vicinity. Defendant Young was knocked unconscious and has no recollection of the accident. Ms. Burnham died in the accident. There were no other witnesses.

Defendant Young was traveling southbound at the time of the accident. Photographs of the scene show that after the accident Ms. Burnham's Volkswagen ended up off the shoulder of the northbound lane facing away from the highway. Defendant Young's vehicle came to rest on the shoulder of the northbound lane, also facing away from the highway.

Photographs show that Defendant Young's vehicle was primarily damaged on the front end of the driver's side of the vehicle. Ms. Burnham's Volkswagen was primarily damaged on the driver's side door and front driver's side portion of the vehicle. The passenger compartment of her vehicle was largely crushed from the impact.

Detective Luna of the Arizona Department of Public Safety investigated the accident. He concluded from evidence at the scene that the accident occurred when Ms. Burnham turned from the right shoulder of the southbound lane, across the southbound lane, and into the northbound lane – that she was making a u-turn from the southbound shoulder to head

---

[1]Both parties' requests for oral argument are denied. Oral argument will not aid the Court's decision and, given the complete briefing, the denial will not result in unfair prejudice to either party. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

north.  As she did so, Luna concluded, she was struck by Defendant Young who was proceeding south.  Detective Luna's report found Ms. Burnham to be at fault and found "no improper action" on the part of Defendant Young.  Dkt. #102-2 at 3.

## II.     Motion for Summary Judgment.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A motion for summary judgment must be granted if, after sufficient time for discovery, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To prevail on her negligence claim, Plaintiff must prove four elements:  a duty on the part of Defendant to exercise reasonable care, a breach of that duty, a causal connection between Defendant's negligent conduct and the claimed injuries, and actual damages.  *See Gipson v. Kasay*, 150 P.3d 228, 230 (Ariz. 2007).  The existence of a duty is generally a question of law, while the other three elements are factual issues "generally within the province of the jury."  *Ritchie v. Krasner*, --- P.3d ---, 2009 WL 1065195, at *2 (Ariz. App. Apr. 21, 2009).  Even though the factual issues are usually reserved for the jury, summary judgment in a negligence action is appropriate "where the facts are undisputed and only one conclusion may reasonably be drawn from them."  *Flying Diamond Corp. v. Pennaluna & Co.*, 586 F.2d 707, 713 (9th Cir. 1978); *see Camacho v. Du Sung Corp.*, 121 F.3d 1315, 1317 (9th Cir. 1997) (same).

### A.     Defendant's Motion.

The moving party bears the initial burden of showing that there exists no genuine issue of material fact, a burden that can be "discharged by . . . pointing out to the district

- 3 -

court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323, 325; *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ("[T]he moving party [may] . . . show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."). Defendant asserts that Plaintiff has presented no evidence that Defendant breached his duty of reasonable care. Dkt. #101 at 1, 5-6. There were no eye witnesses to the accident, and Plaintiff failed to disclose an expert accident reconstructionist by the disclosure deadline set by the Court. *Id.* at 5-6; *see* Dkt. #80 ¶2. The only admissible evidence from which negligence could be inferred, Defendant argues, is the report authored by Detective Luna and police photographs of the accident scene. Dkt. #101 at 1-2, 5. As noted above, Detective Luna's report found Ms. Burnham to be at fault. Dkt. #102-2.[2]

### B. Plaintiff's Response.

Once the moving party has met its initial burden, as Defendant has here, the nonmoving party bears the burden of demonstrating the existence of some genuine issue of material fact – of producing sufficient admissible evidence to support a jury verdict in its favor at trial. *Celotex*, 477 U.S. at 324, 327; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that a nonmoving party must show more than "some metaphysical doubt as to the material facts"). Plaintiff relies on two categories of evidence. The Court will address them separately.[3]

---

[2]Plaintiff has objected, in a motion improperly couched as a motion to strike (see LRCiv 7.2(m)), to the admissibility of Detective Luna's affidavit (Dkt. #102-2 at 20-22), but has not objected to the admissibility of Detective Luna's report. Dkt. #111. The Court has considered only the report in ruling on this motion. *See* Fed. R. Ev. 803(8).

[3]Plaintiff included an excerpt from Kathleen Godley's deposition testimony as an exhibit to her response (Dkt. #108-5), but did not cite that testimony in her argument (Dkt. #107 at 9-11; Dkt. #110). The Court nonetheless reviewed Ms. Godley's testimony. She asserts that the site of the accident is a foolish place to make a u-turn and that Ms. Burnham had never indicated she was returning to Yuma (Dkt. #108-5 at 2), but this meager evidence could not support a jury finding of negligence by Defendant Young. It is doubtful Ms. Godley's testimony about the foolishness of making a u-turn at the site of the accident

### 1. **Delmar Foote.**

Delmar Foote, a friend of Ms. Burnham, visited the accident scene on the day after the accident. The vehicles and debris had already been removed. Mr. Foote nonetheless concluded from his inspection of the site that Defendant Young caused the accident.

Mr. Foote's conclusion was based on an oil stain in the northbound lane which he attributed to Ms. Burnham's car, a gouge in the northbound lane which he found to be consistent with the loss of the wheel on Ms. Burnham's vehicle and with the condition of Ms. Burnham's vehicle which he later examined, and debris that he located to the side of the northbound lane several yards beyond where he believed the accident occurred. Dkt. #107-7. Mr. Foote concluded that Defendant Young drifted across the center line and struck Ms. Burnham's car, shearing off the left front wheel of her car and causing the I-beam of her car to gouge the road. *Id.* He concluded that her car came to rest where he found the oil stain in the northbound lane near the gouge mark (even though photographs of the scene show that her car came to rest well off the roadway), and that debris from her car was thrown forward many yards because of the momentum she had while driving straight up the highway. *Id.*

Mr. Foote based his opinions on "[y]ears of working on V.W.'s," "numerous years" of working as the service manager for a Chrysler dealer, and the fact that he had "been around wrecked cars and stuff" for "a good portion of my life." *Id.* at 2-4. During his deposition, Mr. Foote discussed the I-beam and ball joint assembly that, he said, Volkswagen started using in 1967 and that was present on Ms. Burnham's car. *Id.* at 5-7. He concluded that this beam caused the gouge mark on the road, and used photographs of another Volkswagen to make the explanation. *Id.* Mr. Foote further testified, on the basis of his work on Volkswagens and his years of servicing Chryslers, that the front end of the

_____

would be admissible under Rule 701 – such a personal observation would not be particularly helpful to the jury. But even if the opinion were admitted, and even if it and the fact that Ms. Burnham did not indicate she was returning to Yuma managed to cast some doubt on the conclusion in Detective Luna's police report that the accident occurred because Ms. Burnham made a u-turn, Plaintiff would still need evidence showing that Defendant Young caused the accident through his negligence. Ms. Godley's testimony provides no such evidence.

Volkswagen was distinctive – that other cars did not have a similar design. *Id.* at 5. He concluded that the straight line of the gouge mark showed that Ms. Burnham's car was traveling in a straight line when it was struck, not making a u-turn as Detective Luna concluded. *Id.* at 4.

Plaintiff's response asserts that Mr. Foote will not be called to testify at trial as an expert witness under Rule 702 of the Federal Rules of Evidence, but that he instead will provide lay opinion testimony under Rule 701. Dkt. #107 at 10. The Court concludes, however, that Mr. Foote cannot express his opinions as a lay witness. Rule 701 provides that a layman's opinions are admissible only if they are "*not* based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c) (emphasis added). This provision of the rule ensures that evidence qualifying as expert testimony under Rule 702 will not evade the reliability scrutiny mandated by the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 701.03[4][b] (2d ed. 2008). It also ensures that parties will not use Rule 701 to evade the expert disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure. *Id.*; *see* Fed. R. Civ. P. 26(a)(2)(A) & (B). Allowing Mr. Foote to render opinions as to the cause of the accident would frustrate both of these objectives.

First, there is ample reason to believe that Mr. Foote's opinions would fail *Daubert* scrutiny if he were presented as a witness under Rule 702. Mr. Foote did not witness the accident, did not inspect the scene while the vehicles were there, viewed the scene only after it had been cleaned up and the debris moved or removed, never read Detective Luna's report or examined accident scene photographs, concluded that Ms. Burnham's vehicle came to rest in a location entirely inconsistent with accident scene photographs, had no idea where Defendant Young's car came to rest, admitted that the gouge mark in the roadway could have been made by almost any car, did not look for or examine skid marks at the scene, and does not know the speed of the vehicles. Moreover, although Mr. Foote has substantial automotive experience, he has no accident reconstruction training. Dkt. ##107-7; 113 at 5-6.

Second, Mr. Foote was never disclosed as an expert witness and never prepared the detailed expert reports required by Rule 26(a)(2)(B). Allowing him to testify as a lay witness would evade these important disclosure obligations and their attendant checks on witness reliability. The Court's Case Management Order emphasized these disclosure obligations and the importance of providing them on the Court's schedule:

> As stated in the Advisory Committee Notes to Rule 26 (1993 Amendments), expert reports disclosed under Rule 26(a)(2)(B) must set forth "the testimony the witness is expected to present during direct examination, together with the reasons therefore." Full and complete disclosures of such testimony are required on the dates set forth above; absent truly extraordinary circumstances, parties will not be permitted to supplement their expert reports after these dates.

Dkt. #39 ¶5(f). The Case Management Order also made clear that Plaintiff was obligated to provide expert disclosures for witness who were not specially retained as experts but who nonetheless would be asked to give expert opinions at trial: "Disclosures under Rule 26(a)(2)(A) must include the identities of treating physicians and other witnesses who have not been specially employed to provide expert testimony in this case, but who will provide testimony under Federal Rules of Evidence 702, 703, or 705." *Id.* at ¶5(e). This provision clearly applied to Mr. Foote, and yet no such disclosures were made.

The Court concludes that Mr. Foote cannot provide opinions as to the cause of the accident under Rule 701. Plaintiff seeks to use him to provide opinions based on specialized knowledge, something he cannot do under Rule 701. Allowing Mr. Foote to testify as a lay witness clearly would frustrate the purposes of Rule 701(c).

Plaintiff does not propose to present Mr. Foote's testimony under Rule 702, and could not in any event. As noted above, Plaintiff never disclosed Mr. Foote as an expert witness under Rule 26(a)(2)(A) or (B) and never complied with the disclosure obligations of the Court's Case Management Order.

Without his opinions on the cause of the accident, Mr. Foote's testimony would be limited to his observations of the accident scene on the day after the accident. *See* Dkt. #107-7 at 1-8, Dkt. #107-8 at 1. Standing alone – without interpretations by a qualified expert witness – these observations provide no basis for a jury to conclude that Defendant

Young caused the accident. Mr. Foote's factual observations therefore provide no basis upon which to deny the motion for summary judgment.

## 2. Anselmo Najera.

Plaintiff's response to the motion for summary judgment includes a previously undisclosed expert report by Anselmo Najera. Defendant objects to the admissibility of Mr. Najera's report because it was not timely disclosed. Dkt. ##113 at 8; 114 at 3-5. The Court agrees.

The Court's Case Management Order required Plaintiff to produce "full and complete" expert reports by November 7, 2008. Dkt. #39 ¶5(a). The Court later extended the deadline to March 27, 2009. Dkt. #80 ¶2. Plaintiff disclosed no expert witness by this date.

The Court's Case Management Order required that rebuttal experts be disclosed by January 26, 2009, a deadline later extended to May 29, 2009. Dkt. ##39 ¶5(c); 80 ¶4. The Court made clear, however, that "*[r]ebuttal experts shall be limited to responding to opinions stated by initial experts.*" *Id.* (emphasis added). The Court included this provision to prevent parties from hiding the ball – from introducing initial experts in the guise of rebuttal experts and thereby frustrating their opponents' opportunity to respond to those experts.

Mr. Najera's report was disclosed by the rebuttal expert deadline, but he clearly is not a rebuttal witness. Mr. Najera affirmatively opines that Defendant Young caused the accident. Dkt. ##108-6 to -8. His opinions are based on police reports, photographs of the accident scene, photographs of Ms. Burnham's vehicle, and the deposition testimony of Mr. Foote – all factors that Mr. Najera could have evaluated before the initial disclosure deadline. Dkt. ##108-6 at 3; 108-7 at 10. Mr. Najera's report is not limited to responding to Defendant's expert witness as required by the Case Management Order. Indeed, Mr. Najera's report does not even mention Defendant's timely-disclosed expert or his opinions.

Mr. Najera clearly is an initial expert who should have been disclosed by March 27, 2009. Mr. Najera's report instead was disclosed well after this deadline and well after

Defendants had produced their expert report in the absence of any Plaintiff's expert. Plaintiff's late production in effect asks the Court to extend the deadline for disclosure of initial experts. The Court specifically advised Plaintiff's counsel, however, that the deadlines in this case were real and that the initial expert disclosure deadline of March 27, 2009, would not be extended. Dkt. ##39 ¶10, 80 ¶7.

Rule 16 of the Federal Rules of Civil Procedure requires district judges to enter case management schedules and provides that such schedules "shall be modified only for good cause[.]" Fed. R. Civ. P. 16(b); *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) ("The scheduling order 'controls the subsequent course of the action' unless modified by the court.") (quoting Fed. R. Civ. P. 16). "Good cause" exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Comm.'s Notes (1983 Am.). Thus, "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609.

The expert deadlines in this case provided Plaintiff ample time to produce an expert report. This case was filed in May of 2007. The Court's schedule, after extension, allowed Plaintiff 20 months to complete her expert work. Plaintiff knew from the beginning that the cause of the accident was a key issue. Plaintiff has not shown that she was unable through reasonable diligence to find and prepare an expert witness in the 20 months before March 27, 2009. Plaintiff therefore has not established good cause to extend the deadline.

"In these days of heavy caseloads, trial courts . . . set schedules and establish deadlines to foster the efficient treatment and resolution of cases." *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). "Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders[.]" *Id.* Because Plaintiff's expert report was not disclosed by the deadline established and emphasized by the Court, Mr. Najera will not be permitted to testify at trial.

Allowing Mr. Najera to testify would prejudice Defendant, who prepared his expert report, completed discovery, and drafted his motion for summary judgment in reliance on the

fact that no opposing expert had been designated. If Mr. Najera's report were allowed, the Court would be compelled to permit Defendant to depose Mr. Najera, to produce a revised expert report, and possibly to conduct other discovery related to Mr. Najera's new opinions – all well after the already-extended discovery period has closed. The Court will not continue to delay the resolution of this already-overdue case, particularly when much of the delay has been due to Plaintiff's incorrect litigation activities. *See, e.g.,* Dkt. #21 at 2.

### C. Summary Judgment Conclusion.

To defeat summary judgment, Plaintiff must produce evidence "such that a reasonable jury could return a verdict" in her favor. *Anderson*, 477 U.S. at 248. For the reasons explained above, the evidence on which Plaintiff relies in response to the summary judgment motion – the opinions Mr. Foote and Mr. Najera – will not be admitted at trial. Without this evidence, Plaintiff clearly has failed to provide evidence from which a reasonable jury could find that Defendant Young was negligent and caused the accident. The motion for summary judgment will therefore be granted.

## III. Motions to Strike.

Plaintiff's motions to strike challenge the admissibility of Detective Luna's affidavit (Dkt. #111) and Defendant's expert (Dkt. #116). The Court has not considered this challenged evidence in ruling on Defendant's motion for summary judgment and Plaintiff's motions to strike are therefore denied as moot. In light of the Court's summary judgment ruling, Defendant's motion to strike (Dkt. #114) is also moot.

**IT IS ORDERED:**

1. Defendant Young's motion for summary judgment (Dkt. #101) is **granted**.

2. All other pending motions (Dkt. ##111, 114, 116) are **denied** as moot.

3. The Clerk of Court shall terminate this action.

DATED this 20th day of July, 2009.

David G. Campbell
United States District Judge